# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES, for the use and Benefit of, ASSET RECOVERY CONTRACTING, LLC, | ) ) ) ) | |
| Plaintiff, | ) | Civil Action No. 03-2860-Ma/A |
| | ) | |
| vs. | ) | |
| | ) | FILED IN OPEN COURT |
| SAFECO INSURANCE COMPANY OF AMERICA, | ) ) | DATE: 6/14/05 |
| | ) | TIME: 9:20 AM |
| Defendant. | ) | INITIALS: JPW |

---

## JOINT PROPOSED PRETRIAL ORDER

In accordance with the pretrial procedures of the United States District Court for the Western District of Tennessee, the parties hereby submit the following Joint Proposed Pretrial Order:

**(1) Jurisdictional Issues:**

This action arises under the Miller Act, 40 U.S.C. § 3131, et seq. (formerly 40 U.S.C. § 270, et seq.) (the "Miller Act"). Venue is proper in this court pursuant thereto, as the federal project, under which this suit arises, is located in the Western District of Tennessee. The parties are not aware of any jurisdictional issues, and the jurisdiction of this Court is not in dispute.

**(2) Pending Motions:**

    **a. Discovery Motions:**

There are no pending discovery motions by either party.

    **b. Evidentiary Motions:**

There are no pending evidentiary motions by either party.

      **c.**     **Dispositive Motions:**

      1.    Defendant has filed a Motion for Summary Judgment, to which Plaintiff has filed a response, and Defendant has filed a reply. Said Motion is still pending before this Court.

**(3)**    **Summary of the case:**

      Price-Davis Construction Co., Inc. (hereinafter "Price-Davis" or "PD") entered into a contract with the Department of Veterans Affairs (hereinafter the "VA") for the construction and improvement of a federally funded construction project known as the Veterans Administration Medical Center, Memphis, Tennessee. Plaintiff, Asset Recovery Contracting, LCC (hereinafter "ARC") entered into two subcontract agreements with Price-Davis Construction Co., Inc. ("Price-Davis"), the prime contractor on said project. Said subcontracts were generally for the performance of "soft demolition work" and "hard demolition work", respectively, (collectively the "Subcontracts"). In connection with the project, Defendant, Safeco Insurance Company of America (hereinafter "Safeco"), as surety, issued a Labor and Material Payment Bond (the "Bond"), on behalf of Price-Davis, as principal. The Bond was to secure certain work performed and material provided by ARC, pursuant to the Miller Act, 40 U.S.C. § 3133, et. seq.

      ARC has made claims against Safeco's Bond for price adjustments to its Subcontracts due to delays, acceleration and inefficiencies and for Subcontract balances.

**(4)**    **The respective contentions of the parties:**

      **a.**     **ARC's contentions:**

      ARC is a demolition contractor, that was hired to systematically dismantle the 5th through 14th floors of the Veteran Affairs Medical Center ("VAMC"), located in Memphis, Tennessee (also referred to as the "Project"). ARC presented a meticulously crafted work plan

348263

2

(ARC's "Technical Management Report") as the method and schedule by which it would work and as the basis for the price contained in two separate contracts (previously identified as the "Subcontracts"). The Technical Management Report was premised on information supplied to the bidders as to the sequence, timing and reliability of precedent trades, such as: asbestos abatement; mechanical removal and re-insulations; installation of a temporary roof; elevator shutdown; and general renovation work. ARC relied upon the contractual promises of the general contractor, Price Davis ("PD"), with respect to scheduling and coordinating the work of the various trades on the Project.

Based upon these promises, ARC entered into the Subcontracts with PD. The first Subcontract was for "soft demolition work," that included: interior finishes, walls, ceilings, mechanical and electrical work-to be demolished with skid-steer loaders, assisted by burners (laborers with oxy/propane torches). The second Subcontract between ARC and PD was for the performance of "hard demolition work." The hard demolition contract was for the removal of floor slabs, to be demolished with specialized demolition robots (tract-mounted electronic/hydraulic remote controlled, articulated arm, lightweight machines) equipped with concrete crushing drawers. With respect to the soft demolition phase, ARC experienced additional mobilization and demobilization costs and performed out-of-sequence work that was not in accordance with its approved technical management plan. On the hard demolition phase, ARC experienced scheduling delays caused directly by PD, and its failure to turn over critical areas (providing ARC with access to its work), late hiring of subcontractors, changes in the scope of work, late completion of critical path items that ultimately resulted in the acceleration of ARC's work.

ARC submits that predecessor activities to the start of both the soft demolition work and hard demolition work were not completed. These include: the removal of VAMC employees from Floors 5 and above; the salvage of the elevators and the removal of this equipment from the elevator shaft; the completion of a temporary roof on Floor 5; the shutdown of the old mechanical roof on the penthouse and the completion and acceptance by the VAMC of the new mechanical room on the 4th floor; the construction of temporary offices and permanent pharmacy offices and moving of employees of VAMC who occupied offices, on the 5th floor and above, to the new temporary offices; timely completion of "Stage One" that was originally planned to occur prior to ARC's receipt of a notice to proceed; denial of access to Floors 4 and 5 to perform soft demolition work utilizing bobcats (as provided in its Technical Management Report); and being provided a schedule by which ARC could plan its work.

Because these milestone activities were not accomplished, pursuant to the Project schedule and Technical Management Report of ARC, ARC incurred additional costs on how it was forced to perform the soft demolition work. Specifically, ARC had to perform soft demolition work on the 4th and 5th floors using hand torches and laborers instead of a bobcat and skid-steer equipment. The former is more labor intensive and more costly than the latter. ARC submits that it is entitled to an additional $251,271 in extra labor costs associated with the soft demolition work and contract balance of $3,203.

Failure to timely perform predecessor activities, as provided in the Subcontracts, also delayed the start of ARC's hard demolition contract work. Because no extension of time was provided, ARC was forced to accelerate its forces and incur additional costs to complete the hard demolition work. Currently, ARC is owed an additional $526,262 for this work and a contract balance of $31,337.

348263

4

The disruptions to ARC's performance of soft and hard demolition work include, but are not limited to, the following:

i)      PD did not move the pharmacy and its workers from the sixth (6th) floor to the ground floor and first (1st) floor until late August 2002, a delay of five (5) months;

ii)     The temporary weather tight roof on the fifth (5th) floor was not finally completed until January 16, 2003;

iii)    The elevator shutdown was not accomplished until early December of 2002 and the penthouse elevator equipment removal was not completed until January 2, 2003;

iv)    An exhaust fan biohazard issue, which was originally discovered in April, 2002 by the mechanical contractor, caused delay to the start of hard demolition;

v)     Hard demolition did not begin until eight (8) months after the start of soft demolition (January 2003), as opposed to the six (6) week lag which ARC had planned (May 2002) between soft and hard demolition;

vi)    ARC was not able to continually ramp up its forces, deploy them in a consistent and sequential pattern. Instead, it worked in fits and starts, demobilizing and re-mobilizing multiple times;

vii)   ARC was significantly impacted by the failure of PD to adhere to Article C.6.2 of the Specifications entitled "Partnering." Specifically, it was envisioned that there would be an initial offsite workshop of two days and four additional one day offsite workshops with representatives of PD, ARC, the government and others in attendance. Because of the early delays on the Project and PD's inability to give concrete dates for commencement of various activities, PD ignored the requirements in Articles C6-2 and instead took a more dictatorial, autocratic approach rather than the partnering approach envisioned by the bid documents.

The provisions of the Subcontracts for Soft and Hard Demolition are identical and include, but are not limited to, the following provisions:

### ARTICLE 3   CONTRACTOR

3.1.1 The Contractor [PD] shall cooperate with the Subcontractor [ARC] in scheduling and performing the Contractor's [PD's] Work to avoid conflicts or interference in the Subcontractor's [ARC's] Work and shall expedite written responses to submittals made by the Subcontractor [ARC] in accordance with Article 4.1 [entitled, Execution and Progress of the Work] and Article 5 [entitled, Changes in the Work]. **As soon as practicable after execution of this Agreement, the Contractor [PD] shall provide the Subcontractor [ARC] copies of the Contractor's [PD's] construction schedule and schedule o of submittals, together with such additional scheduling details as will enable the Subcontractor [ARC] to plan and perform the Subcontractor's [ARC's] Work properly**.

[Emphasis added]

### C.4.1   Contractor Responsibilities

The Contractor [PD] is solely responsible for the management (planning, supervision and contract coordination), and construction (including all labor, equipment, materials and inspections) to meet requirements of this contract.

### C.6.2 Partnering

To most effectively accomplish the contract, the Government is committed to form a cohesive Partnership with the contractor [PD] and its major subcontractors [ARC]... The Partnership will strive to draw on the strengths of each organization in an effort to achieve a quality project done right the first time, within budget, on schedule, and with the contractor making a fair profit... The actual scope of the Partnership agreement is subject to bilateral agreement after ward, but an initial off-site workshop of **two** days is required. Four (4) additional one-day off-site workshops are required and will be scheduled at a later date. In addition, informal bi-weekly job-site partnering sessions are required throughout the duration of the project.

[Emphasis added]

**Section 01010 of the General Conditions**

2.      Stage II, Demolition: <u>After all occupants from the Fourth,
        Fifth and Sixth Floors of the Tower have vacated,</u>
        demolition and all other work can continue on the tower
        according to the Contractor's [PD's] approved work plan....

    a)      The new mechanical room on the Fourth floor must
            be constructed, accepted by the Government and
            occupied prior to disconnection of any utilities in
            the tower that serve occupied areas below the
            Fourth floor.

    b)      New exhaust fans to be located on the Fifth floor
            roof must be installed in temporary configuration
            and completely operational and accepted by the
            Government prior to demolition of the tower or
            final disconnection of existing fans...

**Section 1310 of the General Conditions**

1.1     Description
<u>The Contractor [PD] shall develop a Network Analysis (NAS) plan
and schedule demonstrating fulfillment of the contract
requirements, shall keep the network up-to-date in accordance with
the requirements of this section and shall utilize the plan for
scheduling, coordinating and monitoring work under this contract</u>
(including all activities of subcontractors [ARC], equipment
vendors and suppliers).  Conventional Critical Path Method (CPM)
Precedence Diagramming Method (PDM) technique will be
utilized to satisfy both time and cost applications...

Safeco provided a Payment Bond to PD, to secure the work performed and material
provided on a federally funded project.  Safeco's liability is co-extensive with that of its
principal, Price-Davis. Accordingly, Safeco has a contractual obligation to pay ARC for the
additional labor hours and costs incurred.

Finally, Safeco asserted that ARC waived and released Safeco's principal, Price-Davis,
and thus, Safeco, as surety, from its claim for damages asserted in the Complaint. ARC denied
that there was proper consideration for such waivers, as these waivers were required to be signed

348263                                      7

for the receipt of partial payment for work performed under the Subcontracts. Further, ARC contends that the partial waiver and lien releases are but one part of a much larger contract and that ARC has complied with the Subcontracts, in their totality, to assert a claim for adjustment to its contract price. Moreover, the lien releases, as signed by ARC, pertain to lien rights of a contractor and not to the more general right of the contractor to receive total payment.

b. **Defendant's contentions:**

Safeco denies any liability to ARC on the ground that ARC's executed written waivers throughout the project with each pay application it submitted which had the effect of waiving and releasing Price Davis, and Safeco as surety, from the damages claimed in the Complaint. Additionally, Safeco has denied the claims on the basis that Price-David had the contractual right to direct and schedule ARC's subcontract work, and ARC did not sustain any damages, as the Contract and Subcontract work was timely completed. Safeco denies that it is liable to ARC because ARC caused or contributed to the additional cost, delays, accelerations and inefficiencies, if any, and any damages stemming therefrom, alleged in its Complaint. Finally, Safeco is not liable for consequential damages, if any.

Safeco contends that ARC executed Waivers in favor of Price-Davis, Safeco's Surety bond principal, for its benefit and the benefit of Safeco, with each pay application submitted throughout the course of ARC's performance of the subject Subcontracts. Each of the Waivers provides that:

> For and in consideration of the payment of $_____ which amount is represented as being currently due is detailed by the application for payment or invoice(s) referenced below, the sufficiency of which is hereby acknowledge [sic], the undersigned does hereby waive, release, and relinquish any and all rights, claims demands, liens claims for relief, causes of action and the like, whether arising at law, under a contract in tort, in equity or otherwise, which the undersigned has now or may have arising out of the performance of work or the furnishing of labor or materials by the undersigned through [the date specified in

such specific pay application and waiver], the effective date of this waiver and lien release . . . with Price-Davis Construction, Inc. in connection with construction of [the project]. Use of the term "Price-Davis Construction, Inc." shall be deemed to mean and refer to the company and its agents, representatives, employees, directors and all those acting in their behalf.

This Waiver & Lien Release applies to all facts, act [sic], events, circumstances, changes, constructive or actual delays, accelerations, extra work, Disruptions, interference's [sic] and the like which have occurred, or may be claimed to have occurred, prior to the effective date hereof, excepting only claims currently unresolved for which written notice has been provided to Price-Davis Construction, Inc. as follows:   [lines provided for listing any such excluded claims]

Except as specifically described above, any excepting retainage, if any held under the Subcontract, the undersigned expressly waives all claims against Price-Davis Construction, Inc. as hereinabove described. The Waiver & Lien Release is intended to apply to and protect Price-Davis Construction, Inc.'s payment and performance bond surety. . .

The last Waiver was executed with Pay Application 14, submitted July 24, 2003, and was effective as to all claims, including delay damages accruing up and through June 23, 2003. ARC had substantially performed both Subcontracts and was demobilized off the project prior to June 23, 2003. Hence, ARC's present claims for delay, acceleration and disruption during the course of its performance fall within the scope of the aforesaid final Waiver. ARC's change orders set forth in Pay Applications 15, requesting equitable adjustment of the Subcontract prices based on delay, were not submitted until November, 2003, approximately five (5) months after ARC had completed its subcontracts and demobilized. Accordingly, ARC's tardy change orders for equitable adjustment due to delays that allegedly occurred during the progress of its work and, necessarily, prior to its June, 2003 departure from the project, must be barred by the Waivers.

Safeco further contends that ARC has suffered no cognizable or recoverable damages for the alleged delays and disruptions to its performance, as prayed for in its Complaint. Pursuant to the Subcontracts, ARC was to proceed with its work on March 6, 2002 and be substantially

348263                                        9

complete under each Subcontract not later than 540 calendar days therefrom, subject to adjustments in the subcontract time as provided for in the subcontract documents. As such, work under the Subcontracts was initially scheduled to be completed August 27, 2003. After duly approved additive and subtractive change orders, the revised completion date was August 28, 2003. ARC substantially completed its work and demobilized under the subcontracts in June of 2003, and the entire project reached final completion on August 20, 2003, eight (8) days early.

The Subcontracts, pursuant to Articles 2, 3, 4, 5, 9 and otherwise, provided Price-Davis, Safeco's principal, with 540 days in which to direct and schedule ARC's work under the Subcontracts. Safeco contends that Price-Davis did so in a manner in which ARC actually completed its work under the Subcontracts early. Accordingly, ARC suffered no damage on account of alleged delays, accelerations or interruptions in its work.

Safeco contends that Price-Davis, with input from ARC, developed the project schedule which ensured completion of the project eight (8) days early. Price-Davis promptly posted the project schedule and continually updated the project schedule based upon ARC's own requests for payment and its "look ahead reports" which documented the percentage of completion of each scheduled value under the Subcontracts. ARC was at all times apprised of the progress of the work and the fluid changes in the schedule; any delays, accelerations, or inefficiencies allegedly suffered by ARC were caused by it, or were the result of its own subcontractors. In all events, the alleged delays and disruptions did not ultimately result in delay of ARC's completion of the work under the Subcontracts.

ARC unilaterally changed its means and methods, i.e., elimination of the chute method for removal, changes in equipment utilization, and failure to provide fall protection, thereby causing delays and inefficiencies.

Additionally, Safeco contends that ARC and its subcontractors, in particular Safway Steel Products ("Safway"), the scaffolding subcontractor, caused the alleged hard demolition delays complained of by ARC. ARC's own inability to obtain certification, approval, and release for use of the necessary scaffolding prior to December 16, 2002, delayed its commencement of the work under the hard demolition subcontract.

Moreover, ARC's own project superintendent was removed from the Project midstream at the demand of the VA for safety violations.

Finally, Safeco is not liable, pursuant to the Contract, the Bond and applicable law, for any claims of ARC for consequential damages, lost profits or attorney fees.

**(4)     Uncontested Facts:**

1.     ARC is an Illinois corporation with its principal place of business located in Skokie, Illinois.

2.     Safeco is a Washington corporation with its principal place of business located in Seattle, Washington.

3.     Price-Davis entered into a General Contract for Construction with the Department of Veterans Affairs dated February 8, 2002, (as previously defined, the "Contract") concerning that project known as "Construction Services, Seismic Corrections/Modernization Phase 2, Project No. 614-011, VA Medical Center - Memphis, Tennessee, Contract No. V101EC0193" (as previously defined, the "Project").

4.     Pursuant to the Miller Act, Safeco, as surety, executed and delivered Payment Bond No. 6117388 (the "Bond") in support of certain obligations of Price-Davis under the Contract.

5.     ARC and Price-Davis entered into those certain Standard Form of Agreement Between Contractor and Subcontractor 1 and 2, each dated March 15, 2002, wherein ARC agreed to execute certain scopes of work under the Prime Contract generally comprised of "soft demolition" and "hard demolition," respectively (as previously defined, the "Subcontracts").

6.     Price-Davis was given notice to proceed under the Contracts effective March 6, 2002 (the "Commencement Date").

7.     PriceDavis's work under the Contract was initially scheduled to be completed August 27, 2003, and taking into consideration time extensions and deductions, the revised completion date of Price-Davis's work under the Contract was August 28, 2003 (the "Completion Date").

8.     All work under the Contract, including ARC's work under the Subcontracts, was complete on August 20, 2003.

9.     By letter dated September 29, 2003, ARC presented its present claim to Safeco.

10.     By Applications and Certificate for Payment, No. 15, dated November 6, 2003, ARC asserted the Change Orders for equitable adjustment under the Subcontracts and for payment of the original Subcontracts respective balances.

11.     ARC filed suit against Safeco November 13, 2003.

**(5)     Contested Issues of Fact:**

1.     Did Price-Davis give ARC on a timely basis project schedules and updates to enable ARC to perform its subcontract work on a timely and efficient basis?

2.      Did ARC incur additional costs due to the failure of predecessor activities being completed on time pursuant to the Project schedule with regard to its work under the soft demolition Subcontract on floors 4 and 5 of the Project?

3.      Did ARC cause or contribute to the additional costs, delays or inefficiencies, if any, with regard to its work under the soft demolition Subcontract on floors 4 and 5 of the Project?

4.      Did ARC incur additional costs due to the failure of predecessor activities being completed on time, pursuant to the Project schedule, with respect to its work under the hard demolition Subcontract on floors 5 through 14 of the Project?

5.      Did ARC cause or contribute to the additional costs, delays, accelerations, or inefficiencies, if any, with respect to its work under the hard demolition Subcontract on floors 5 through 14 of the Project?

**(6)     Contested Issues of Law:**

1.      Is ARC entitled to a contract price adjustment due to:

(a)      a failure of Price-Davis to timely complete predecessor activities to the start of ARC's work; and

(b)      a failure of Price-Davis to provide ARC "unfettered" access to its work; and

(c)      a failure of Price-Davis to provide a schedule to ARC, in such a timely fashion that it could plan and schedule its work?

2.      Is Safeco's liability coextensive with its principal, Price-Davis?

3.      What claims, if any of ARC are covered by Safeco's Bond?

4.      Did Safeco breach the Bond by failing to pay ARC for the additional labor and materials it contends it supplied as a result of the unforeseeable changes, if any, experienced by ARC on the Project?

5.      Did ARC release Price-Davis, and thus Safeco as surety, from its present claims by executing the waivers contained in the pay applications?

6.      Was ARC, pursuant to the Subcontracts, required to perform its work as directed and as scheduled by Price-Davis?

7.      Was Price-Davis, pursuant to the Subcontracts, required to provide ARC "unfettered" access to its work?

**(7)      List of Exhibits:**

The parties intend to offer the following exhibits into evidence.  Except as specifically set forth below, the Parties hereby stipulate to the admissibility of each exhibit.  The parties further stipulate that correct copies of any exhibit shall be treated as if they were the originals.

| Trial Exhibit No. | | Deposition Exhibit No. |
|---|---|---|
| 1. | Initial Schedule Report | 1 |
| 2. | Donald Meyer Binder | 2 |
| 3. | September 7, 2004 letter from Automated Construction Technology ("ACT") to Bob West Re:  enclosing CD Rom – project updates | 3 |
| 4. | Day 1 Approved Schedule | 4 |
| 5. | Drawing – Comparison of Day 1 v. Actual Dates | 5 |
| 6. | Network Analysis System Logic Diagram | 6 |
| 7. | August 16, 2002 letter from Price-Davis to ARC Re: | 7 |

| Trial Exhibit No. | | Deposition Exhibit No. |
|---|---|---|
| | Enclosing Look Ahead report | |
| 8. | September 7, 2001 - Technical Management Approach Report | 8 |
| 9. | February 21, 2002 – VAMC Planning Meeting Agenda | 9 |
| 10. | March 26, 2002 – Job Meeting No. 1 - Agenda Completion of first floor offices | 10 |
| 11. | April 16, 2002 – Job Meeting No. 4 - Minutes and Agenda (CPM) | 11 |
| 12. | June 6, 2002 letter from Price-Davis to ARC Re:  Hours to be worked per week | 12 |
| 13. | June 24, 2002 letter from ARC to Price-Davis Re: Request for schedule update | 13 |
| 14. | July 2, 2002 letter from Price-Davis to ARC Re: Percentages of work being performed | 14 |
| 15. | June 18, 2002 letter from ARC to Price-Davis Re: Schedule concerns | 15 |
| 16. | Site Specific Safety Plan | 16 |
| 17. | March 21, 2002 letter from ARC to Price-Davis Re: Response to handwritten notes from VA | 17 |
| 18. | March 25, 2002 letter from ARC to Price-Davis Re: Asbestos Floor Tile Issues | 18 |
| 19. | March 26, 2002 letter from ARC to Price-Davis Re: Items not included on proposal | 19 |
| 20. | April 2, 2002 letter from Price-Davis to ARC Re: Enclosing two subcontract agreements | 20 |
| 21. | April 9, 2002 – Job Meeting No. 3 - Minutes (completion of 1st floor) and Agenda | 21 |
| 22. | May 3, 2002 letter from ARC to Price-Davis Re:  Issues | 22 |

348263

15

| Trial Exhibit No. | | Deposition Exhibit No. |
|---|---|---|
| | of proposed tower crane | |
| 23. | June 5, 2002 letter from ARC to Price-Davis Re: Demolition work; approval of schedule | 23 |
| 24. | June 18, 2002 – Job Meeting No. 9 - Minutes and Agenda | 24 |
| 25. | June 26, 2002 fax from ARC to Matt Bunchek Re: limited access to tower | 25 |
| 26. | Two June 27, 2002 letters from ARC to Price-Davis Re: Working five/ten; dates of turnover | 26 |
| 27. | July 2, 2002 – Job Meeting No. 10 - Minutes (ARC working five tens) and Agenda | 27 |
| 28. | August 16, 2002 letter from ARC to Price-Davis Re: Problems revealed at coordination meeting | 28 |
| 29. | August 19, 2002 letter from Price-Davis to ARC Re: Response to August 16 letter | 29 |
| 30. | September 5, 2002 letter from Veterans Administration ("VA") to Price-Davis Re: Work performed below 4th floor | 30 |
| 31. | General Conditions Section 01010 - Fire Safety | 31 |
| 32. | General Conditions Section 01010 - Protection | 32 |
| 33. | General Conditions Section 02050 - Demolition | 33 |
| 34. | September 17, 2002 – Job Meeting No. 17 - Minutes (falling block) and Agenda | 34 |
| 35. | September 10, 2002 – Job Meeting No. 16 - Minutes (temporary roof) and Agenda | 35 |
| 36. | September 16, 2002 letter from ARC to Price-Davis Re: Delivery date of crane | 36 |

| Trial<br>Exhibit No. | | Deposition<br>Exhibit No. |
|---|---|---|
| 37. | October 15, 2002 letter from ARC to Price-Davis Re: Hard demolition phase | 37 |
| 38. | October 17, 2002 letter from ARC to Price-Davis Re: Penthouse walk-through | 38 |
| 39. | October 29, 2002 letter from Price-Davis to ARC Re: Letter and agenda for partner workshop | 39 |
| 40. | October 29, 2002 – Job Meeting No. 20 - Minutes (exhaust fans) and Agenda | 40 |
| 41. | November 7, 2002 letter from ARC to Price-Davis Re: Exhaust fans | 41 |
| 42. | November 13, 2002 letter from ARC to Price-Davis Re: Schedule restraints | 42 |
| 43. | November 15, 2002 letter from ARC to Price-Davis Re: Temporary partitions | 43 |
| 44. | CPM Schedule | 44 |
| 45. | November 19, 2002 – Job Meeting No. 21 - Minutes (temporary roof) and Agenda | 45 |
| 46. | November 22, 2002 letter from ARC to Price-Davis Re: Hard demolition | 46 |
| 47. | November 26, 2002 letter from Price-Davis to ARC Re: Delay because of fallen block | 47 |
| 48. | December 2, 2002 letter from ARC to Price-Davis Re: Reduction in crew size | 48 |
| 49. | December 16, 2002 fax from ACT to Price-Davis Re: Completion schedule | 49 |
| 50. | December 27, 2002 letter from ARC to Price-Davis Re: Enclosing  marked up - 4.2.1.1 Technical Management Approach | 50 |
| 51. | Drawing - Activity and duration time lines | 51 |

| Trial Exhibit No. | | Deposition Exhibit No. |
|---|---|---|
| 52. | December 27, 2002 letter from ARC to Price-Davis Re: Scaffold; pictures attached | 52 |
| 53. | OSHA Inspections of Safeway scaffolding | 53 |
| 54. | December 3, 2002 letter from Price-Davis to ARC Re: Completion of scaffolding | 54 |
| 55. | May 2, 2002 fax from ARC to Price-Davis Re: Break down of soft and hard demo | 55 |
| 56. | July 18, 2002 Return of Submittal of VA Re:  Site specific safety plan/enviro protection plan | 56 |
| 57. | March 20, 2002 fax from Price-Davis to ARC Re: Periodic pay requests | 57 |
| 58. | December 12, 2002 fax from ARC to Cohen, Seligas, Pallas Re: Partial Waiver & Payment Applications | 58 |

**[ARC objects to that portion of this exhibit which is comprised of the fax coversheet from ARC to Cohen, Seligas & Pallas]**

| | | |
|---|---|---|
| 59. | Payment Applications | 59 |
| 60. | August 27, 2002 – VAMC – Issues/Solutions | 60 |
| 61. | January 23, 2003 letter from ARC to Price-Davis Re: Additional work | 61 |
| 62. | Change Order No. 9 | 62 |
| 63. | May 3, 2002 fax from Price-Davis to ARC Re: Enclosing Look-Ahead Reports | 63 |
| 64. | May 15, 2002 letter from Price-Davis to ARC Re:  Look-Ahead Report - May | 64 |
| 65. | September 4, 2002 letter from Price-Davis to ARC Re: Look-Ahead Report - September | 65 |

348263

| Trial<br>Exhibit No. | | Deposition<br>Exhibit No. |
|---|---|---|
| 66. | October 14, 2002 letter from Price-Davis to ARC Re: Look-Ahead Report - October | 66 |
| 67. | November 13, 2002 letter from Price-Davis to ARC Re: Look-Ahead Report - November | 67 |
| 68. | December 11, 2002 letter from Price-Davis to ARC Re: Look-Ahead Report - December | 68 |
| 69. | December 3, 2002 letter from Price-Davis to ARC Re: Request for rescheduling of project | 69 |
| 70. | December 23, 2002 fax from ACT to Price-Davis Re: Revision of ARC demolition schedule | 70 |
| 71. | December 26, 2002 fax from ARC to ACT and Price-Davis Re:  ARC's input into revised schedule | 71 |
| 72. | Payment Applications (chute) | 72 |
| 73. | December 4, 2002 letter from Price-Davis to ARC Re: Employee knocking hole in chase wall | 73 |
| 74. | July 15, 2002 letter from ARC to Price-Davis Re:  Use of Bobcat on fifth floor | 74 |
| 75. | July 19, 2002 letter from ARC to Price-Davis Re:  Use of Bobcat on fifth floor | 75 |
| 76. | July 16, 2002 letter fro Price-Davis to VA Re: Requesting approval from VA for use of Bobcat | 76 |
| 77. | July 19, 2002 letter from Price-Davis to VA Re: Enclosing Fire Marshal's approval | 77 |
| 78. | August 14, 2002 letter from ARC to Price-Davis Re: Scaffolding drawings submitted for approval | 78 |
| 79. | September 3, 2002 letter from ARC to Price-Davis Re: Response to issues of VA on scaffolding drawings | 79 |
| 80. | September 3, 2002 fax from Safway Steel to ARC Re: Update of proposal for scaffolding services | 80 |

| Trial<br>Exhibit No. | | Deposition<br>Exhibit No. |
|---|---|---|
| 81. | November 4, 2002 letter from Safway to ARC  Re: Validation of recertification | 81 |
| 82. | November 21, 2002 letter from Safway to ARC Re: Damage to scaffold due to wind | 82 |
| 83. | December 3, 2002 letter from Associated Mgmt Consultants To ARC, Safway and Price-Davis Re: Questioning tie-downs | 83 |
| 84. | December 3, 2002 – Job Meeting No. 22 - Minutes (scaffolding) and Agenda | 84 |
| 85. | December 5, 2002 letter from AMC to Price-Davis Re: Concerns about ARC's lack of communication | 85 |
| 86. | December 5, 2002 e-mail from Price-Davis to ARC Re: Safety consultant's issues | 86 |
| 87. | December 6, 2002 letter from Price-Davis to ARC Re: Receipt of recertification | 87 |
| 88. | December 6, 2002 e-mail from Price-Davis to ARC Re: Reaffirming receipt of recertification | 88 |
| 89. | December 10, 2002 letter from Associated Mgmt to Price-Davis Re:  Issues about alterations to erection plan | 89 |
| 90. | December 10, 2002 letter from Price-Davis to ARC Re: Requesting certification | 90 |
| 91. | December 10, 2002 letter from Price-Davis to ARC Re: Requesting certification | 91 |
| 92. | December 11, 2002 handwritten letter from AMC to Price-Davis Re:  Fourth visual inspection | 92 |
| 93. | December 11, 2002 letter from Price-Davis to ARC Re: Digital pictures taken | 93 |
| 94. | December 13, 2002 letter from Price-Davis to ARC Re: Re-inspection of scaffolding corrections | 94 |

348263

20

| Trial Exhibit No. | | Deposition Exhibit No. |
|---|---|---|
| 95. | December 16, 2002 – Inspection logs | 95 |
| 96. | December 16, 2002 fax from Price-Davis to Re: Amerisure Insurance | 96 |
| 97. | December 16, 2002 fax from Price-Davis to ARC Re: Adjustments made to scaffolding | 97 |
| 98. | December 17, 2002 letter from Price-Davis to ARC Re: Scaffold release | 98 |
| 99. | January 2, 2003 letter from VA to Price-Davis Re: Removal of Werner from job | 99 |
| 100. | January 2, 2003 handwritten memorandum of Price-Davis Re:  Description of incident (demolition) | 100 |
| 101. | January 3, 2003 letter from Price-Davis to ARC Re: Demanding removal of Werner from job | 101 |
| 102. | January 10, 2003 letter fro ARC to Price-Davis Re: Revised plan for roof demo | 102 |
| 103. | Change orders | 103 |
| 104. | December 10, 1002 letter from Price-Davis to ARC Re: Clarification of scope and schedule deviations | 104 |
| 105. | June 30, 2002 letter from Price-Davis to ARC Re:  Issue of five ten hour days | 105 |
| 106. | June 3, 2003 fax from ARC to Price-Davis Re: Attaching schedule to close out jog | 106 |
| 107. | June 16, 2003 – Daily log sheet | 107 |
| 108. | June 6, 2003 transmittal from M.A.C Company to Price-Davis Re:  Photo – damage to temporary roof | 108 |
| 109. | June 19, 2003 letter from ARC to Price-Davis Re: Completion of work | 109 |

348263

| Trial Exhibit No. | | Deposition Exhibit No. |
|---|---|---|
| 110. | June 20, 2003 fax from ARC to Price-Davis Re: Transmitting Look-Ahead report (washdown) | 110 |
| 111. | June 23, 2003 letter from Price-Davis to ARC Re: Project close out | 111 |
| 112. | July 10, 2003 letter from ARC to Price-Davis Re: Response to Exhibit 111 | 112 |
| 113. | Letter dated September 5, 2002 from Jim Taylor at Veterans Administration to Bob West at Price-Davis | |
| 114. | Letter dated October 28, 2002 from Jim Taylor at Veterans Administration to Bob West at Price-Davis | |
| 115. | Letter dated December 3, 2002 from Jim Taylor at Veterans Administration to Bob West at Price-Davis | |
| 116. | Letter dated December 4, 2002 from Jim Taylor at Veterans Administration to Bob West at Price-Davis | |
| 117. | Letter dated January 2, 2003 from Jim Taylor at Veterans Administration to Bob West at Price-Davis | |
| 118. | September 29, 2003 correspondence from ARC, through counsel, to Price-Davis on which Safeco was copied, re: claim for equitable adjustment. | |
| 119. | The Prime Contract documents | |
| 120. | The Project plans | |
| 121. | The Subcontract documents | |
| 122. | Plaintiff's safety manual, including its job plan, safety plan, forms, and MSDS | |
| 123. | All certified public records received from the Veterans Administration pursuant to Freedom of Information Act requests | |
| 124. | All certified public records received from OSHA pursuant to Freedom of Information Act requests | |

| Trial<br>Exhibit No. | | Deposition<br>Exhibit No. |

125.   Scaffolding plans received from Safway

126.   The expert report of Victor Ostrowski and all attachments/appendix

127.   The video of the Project safety meeting

128.   All photos of scaffolding

129.   All photos depicting the preexisting Veterans Administration Building received from Price-Davis' files

130.   All photos of the elevators on the Project received from Price-Davis' files

131.   All photos of demolition activities received from Price-Davis' files

132.   September 6, 2001 letter from Daniel Hoffman to Price-Davis enclosing ARC's proposal

133.   February 8, 2002 letter from Department of VA, John Blake enclosing Contract No. V101BC0193-2PD

134.   February 19, 2002 letter from Bob West to VAMC enclosing Payment and Performance Bond

135.   Payment Bond - Bond No. 6117388

136.   March 6, 2002 Pre-Construction Conference

137.   June 18, 2002 ARC letter from Jim Werner to Bob West of Price-Davis regarding scheduling concerns

138.   June 24, 2002 ARC letter from David Schauer to Rob Cohen regarding scheduling update

139.   June 30, 2002 Price-Davis letter of Rob Cohen to David Schauer of ARC regarding response letter dated 6/27/02

140.   July 2, 2002 Price-Davis letter of Lynne Carter regarding approved percentages for June 25, 2002 billing

| Trial Exhibit No. | | Deposition Exhibit No. |
|---|---|---|

141.  July 11, 2002 letter to Rob Cohen to James Taylor regarding 5th Floor Abatement Plan

142.  July 26, 2002 ACT Potential Time Request for FSA-004

143.  August 5, 2002 VAMC Issues and Resolution Meeting Minutes

144.  August 6, 2002 Look Ahead Schedule for VAMC

145.  August 14, 2002 ARC letter of David Schauer to Bob West of Price-Davis regarding the final scaffold drawings

146.  August 18, 2002 Arc letter of David Schauer to Bob West of Price-Davis regarding scheduling meeting of August 15, 2002

147.  August 26, 2002 Price-Davis letter of Tony Godwin regarding hot cutting of trayveyor

148.  August 30, 2002 ARC letter of David Schauer to Bob West of Price-Davis regarding ARC progress of work and hot cutting trayveyors

149.  September 24, 2002 Arc letter of David Schauer to Bob West of Price-Davis regarding storage of elevator equipment

150.  October 9, 2002 Meeting Minutes regarding check list for hard demolition

151.  October 15, 2002 ARC letter of Jim Werner regarding hard demolition phase start:  potential delay

152.  October 20, 2002 ARC letter of David Schauer to Bob West of Price-Davis regarding David Schauer's credentials as on-site competent person

153.  October 23, 2002 ARC letter of David Schauer to Bob West of Price-Davis regarding change order request for Mr. Totolo's office, 4th floor

348263

| Trial<br>Exhibit No. | | Deposition<br>Exhibit No. |
|---|---|---|
| 154. | October 24, 2002 ARC letter of Jim Werner to Bob West of Price-Davis regarding clarifications and confirmation of change order for Mr. Totolo's office | |
| 155. | October 28, 2002 ARC letter of John Anderson to Bob West of Price-Davis regarding lead plan stairwell, handrail removal | |
| 156. | October 30, 2002 Meeting Minutes regarding VAMC Issues and Resolutions | |
| 157. | November 4, 2002 VAMC Team Building Meeting Minutes | |
| 158. | November 6, 2002 Price-Davis letter of Tony Godwin regarding exhaust fumes | |
| 159. | November 12, 2002 ARC letter of David Schauer to Bob West of Price-Davis regarding asbestos panel removal from roof. | |
| 160. | November 12, 2002 ARC letter of David Schauer to Bob West of Price-Davis regarding request for change in work times | |
| 161. | November 14, 2002 ARC letter of David Schauer to Bob West of Price-Davis regarding ARC not being on site in November of 2002 | |
| 162. | November 18, 2002 VAMC letter of James Taylor regarding existing laboratory exhaust systems | |
| 163. | November 18, 2002 e-mail from David Schauer to Jim Werner regarding status of Project | |
| 164. | November 19, 2002 ARC facsimile from Jim Werner to Bob West of Price-Davis regarding existing laboratory exhaust system | |
| 165. | November 19, 2002 e-mail from Jim Werner to David Schauer regarding status of Project | |
| 166. | December 2, 2002 ARC letter of James Werner to Bob | |

| **Trial Exhibit No.** | | **Deposition Exhibit No.** |
|---|---|---|

West of Price-Davis regarding 4-week delay:  3rd floor ceiling incident

167. December 4, 2002 Price-Davis letter of Bob West to ARC regarding meeting in VA trailer

168. December 9, 2002 e-mail from Bob West of Price-Davis to James Werner regarding recertification of scaffolding

169. December 17, 2002 ARC letter of James Werner to Bob West of Price-Davis regarding explanation of Bill Bodford's apology

170. December 18, 2002 ARC letter of James Werner to Bob West of Price-Davis regarding VAMC/Irwin's letters dated 12/15/02 and 12/10/02

171. December 23, 2002 Price-Davis letter of Lynne Carter regarding partnering session information

172. January 3, 2003 Price-Davis letter of Bob West to ARC regarding removal of concrete beams on the roof, enclosing January 2, 2003 letter of VAMC

173. January 7, 2003 ARC letter of David Schauer to Bob West of Price-Davis regarding change order for 4th Floor were completed on VA Project Manager's Office Suite

174. March 3, 2003 VAMC letter of James Taylor to Bob West of Price-Davis regarding Project status

175. CPM Schedule dated run date of December 16, 2002 start date March 6, 2002, finish date October 2, 2003 and data date on November 27, 2002

176. Contract Progress Reports dated:  May 27, 2002; April 22, 2002; February 25, 2002; and November 26, 2002

177. Owner Change Orders for Contract V101BC0193

178. Volume 1 and Volume 2 of VAMC Specifications

179. ARC Summarization of hand versus machine analysis for

| Trial<br>Exhibit No. | | Deposition<br>Exhibit No. |
|---|---|---|

Floors 4 and 5 - Soft Demo

180.  ARC Cost Spread Sheet Detail

181.  ARC Cost Transactions

182.  Construction in Industry Equipment and Supply Invoice of July 16, 2002 to ARC

183.  Skid steer loaders pricing sheet

184.  ARC Summarization of Hard Start Delay Costs through January 4, 2003

185.  Rental Max Equipment Rental Catalog dated 2002

186.  Summarization of Change Order Work performed by ARC for Price-Davis dated June 26, 2003

187.  Payment Applications of ARC Nos. 1 - 15 for Hard Demolition Contract

188.  Payment Applications of ARC Nos. 1 - 15 for Soft Demolition Contract (the Soft Demolition Contract Payments Applications were a deposition exhibit)

189.  ARC Daily Load Analysis

190.  CPM Schedule received November 28, 2002 with a run date of October 17, 2002 - data date of September 25, 2002, finish date of September 12, 2003 and a start date of March 6, 2002

191.  Progress Photographs of the Project (discovered on the last production of documents of Price-Davis)

192.  The expert report of Paul Kaiser, and all attachments/appendix

(8)   **List of Witnesses:**

a.   **ARC's witnesses:**

348263                                    27

    **i.**      **ARC will call the following witnesses:**

         1.  Daniel Hoffman

         2.  James Werner

         3.  David R. Schauer

         4.  Bill Anderson

         5.  Miguel Gomez

         6.  Ben Wilson

         7.  Bill Freehling

         8.  Paul Kaiser

         9.  Donald H. Meyer

        10. Bob West

        11. Mike McCabe

    **ii.**     **ARC may call the following witnesses:**

         1.  Matt Bunchek

         2.  Tony J. Godwin

         3.  Rob Cohen

         4.  Bill Bodford

         5.  Chris Freschette

         6.  Peter Brown

         7.  Skeeter Davis

         8.  Thom Price

         9.  Any witness designated by Safeco

    **iii.**    **ARC will call the following aforementioned expert witness:**

Paul Kaiser. Mr. Kaiser will offer opinions and conclusions regarding ARC's alleged delays, accelerations, and inefficiencies.

**b.**      **Safeco's witnesses:**

    **i.**      **Safeco will call the following witnesses at trial:**

        1. Bob West

        2. Bill Freehling

        3. Donald Meyer

        4. Larry Irwin

        5. Victor Ostrowski

        6. Daniel Hoffman - by deposition or in person.

        7. James Werner - by deposition or in person.

        8. David Schauer - by deposition or in person.

        9. Matthew Bunchek - by deposition or in person.

    **ii.**      **Safeco may call the following witnesses:**

        1. Chris Frechette

        2. Peter Brown

        3. Skeeter Davis

        4. Thom Price

        5. Rob Cohen

        6. Terry Godwin

        7. James Taylor

        8. Bill Bodford

        9. Ron McGill

10. Any witness designated by ARC

iii.    **Safeco will call the following aforementioned expert witnesses:**

Victor Ostrowski. Mr. Ostrowski will offer opinions and conclusions in rebuttal concerning ARC's alleged delays, accelerations, and inefficiencies.

**(9)    Deposition Testimony:**

Except as stated in the foregoing list of witnesses, the parties do not expect to offer any deposition testimony into evidence at trial. However, the parties reserve the right to introduce any deposition taken in this cause.

**(10)    An Estimate of the Length of Trial:**

The parties estimate that the trial of this cause will take approximately four (4) days.

**(11)    This Case is a Non-Jury Trial.**

**(12)    Amount of Ascertainable Damages:**

    a.    **ARC's claimed damages:**

- Actual cost of soft demolition work on 4th floor                         $120,754.00

- Actual cost of soft demolition work on 5th floor                         $ 95,498.00

- Actual average cost of soft demolition work on 4th floor            $ 9,112.00

- Actual average cost of soft demolition work on 5th floor            $ 29,112.00

- Labor inefficiency on 4th floor                                                  $ 91,642.00

- Labor inefficiency on 5th floor                                                  $ 66,382.00

- **Total labor inefficiency for 4th and 5th floors**                 **$158,024.00**

- ARC's costs for additional mobilizations –
  8 mobilizations @ average of 9 men per trip
  ($270 per man per mobilization-                                                $ 17,010.00

- Added per diem due to additional time
  required to hand demo 4th floor
  (34 days - 7 = 27 days w/9 men @ $35)                    $  7,505.00

- Added per diem due to additional time required
  to hand demo 5th floor
  (27 days - 7 = 20 days w/9 men @ $35)                    $  6,300.00

- Project Coordinator Salary
  47 days @ $393.00                                        $ 18,471.00

- Project Coordinator Per Diem
  47 days @ $40.00                                         $  1,880.00

- Project Coordinator Housing
  47 days @ $66.50                                         $  3,125.50

- General Foreman Salary
  47 days @ $373.00                                        $ 17,531.00

- General Foreman Per Diem
  47 days @ $35.00                                         $  1,645.00

- 12 one-yard carts to load out debris                     $  7,780.00

- Bobcats (2) on site -
  453 loaders
  61 days @ $180.00                                        $ 10,980.00

  **Subtotal cost**                                        **$251,271.00**

- Original Soft Demolition Contract Balance                $   3,203.00

  **Sum of Unpaid Soft Demolition**                        **$ 254,474.00**

- Hard Demolition Cost                                      $ 526,262.00

- Original Hard Contract Balance                           $ 31,337.00

  **Sum of Unpaid Hard Demolition**                        **$ 557,599.00**

  **Total**                                                **$812,073.00**

b.   **Safeco's claimed damages:**  None.

348263                          31

**(13)    Interested Attorneys:**

Roy S. Cohen and Shawn R. Farrell, Cohen, Seglias, Passas, Greenhall & Furman, P.C., 1515 Market Street, 11th Floor, Philadelphia, PA  19102.  Attorney for ARC.

Joseph T. Getz, Less, Getz, & Lipman, 100 Peabody Place, Ste. 1000, Memphis, TN 38103; (901) 525-8700.  Attorney for ARC.

John M. Gillum, Manier & Herod, 2200 One Nashville Place, 150 Fourth Avenue North, Nashville, TN  37219; (615) 244-0030.  Attorney for Safeco.

Copies of the letterhead for each of the above-listed attorneys are attached hereto as Collective Exhibit A.

**(14)    Special Equipment to be Used:**

A videocassette recorder, television monitors, and overhead projectors.

Respectfully submitted,

Shawn R. Farrell
COHEN, SEGLIAS, POLLAS,
GREENHALL & FURMAN, PC
1515 Market Street, 11th Floor
Philadelphia, PA  19102

and

Joseph T. Getz
LESS, GETZ, & LIPMAN
100 Peabody Pl., Ste 1000
Memphis, TN  38103
(901) 525-8700

Attorneys for Plaintiff

348263                                         32

John M. Gillum (BPR No. 10230)
MANIER & HEROD
2200 One Nashville Place
150 Fourth Avenue North
Nashville, TN  37219
(615) 244-0030

Attorneys for Defendant

Accepted

June 14, 2005

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 51 in case 2:03-CV-02860 was distributed by fax, mail, or direct printing on June 14, 2005 to the parties listed.

---

Kenneth Schrupp
SMITH & CASHION
424 Church St.
Ste. 1200
Nashville, TN 37219--230

John M. Gillum
MANIER & HEROD
150 4th Avenue North
Ste. 2200
Nashville, TN 37219--249

Joseph T. Getz
LESS GETZ & LIPMAN
100 Peabody Place
Ste. 1000
Memphis, TN 38103

Shawn R. Farrell
COHEN SEGLIAS PALLAS GREENHALL & FURMAN, PC
1515 Market Street
11th Floor
Philadelphia, PA 19102

Roy S. Cohen
COHEN SEGLIAS PALLAS GREENHALL & FURMAN, PC
1515 Market Street
11th Floor
Philadelphia, PA 19102

Honorable Jon McCalla
US DISTRICT COURT